UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MEL THOMPSON, | : | |
| | : | CIVIL ACTION NO. |
| Plaintiff | : | 3:07 CV 01439 VLB |
| | : | |
| v. | : | |
| | : | |
| ANTHONY STAFFIERI, ET AL, | : | March 25, 2008 |
| | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CONNECTICUT LOCAL POLITICS, LLC'S AND CHRISTOPHER BIGELOW'S MOTION TO DISMISS[1]

Plaintiff Mel Thompson ("Thompson") has brought this lawsuit against Connecticut state and town officials and others alleging, *inter alia*, U.S. Constitutional and federal civil rights violations because his name did not appear on the November 2007 ballot as a candidate for mayor of the Town of Derby. Defendant Connecticut Local Politics, LLC ("CTLP"), is a limited liability corporation registered in Connecticut and defendant Christopher Bigelow ("Bigelow"), is the only principal of CTLP and the operator of CTLP's sole property, Ctlocalpolitics.net. Thompson alleges that CTLP and Bigelow allowed defamatory remarks by unidentified third parties to be posted online, and asserts a defamation claim against CTLP and defamation and negligence claims against Mr. Bigelow individually.

---

[1] Defendants Connecticut Local Politics, LLC and Christopher Bigelow received substantial assistance in drafting this Memorandum of Law from Leslie C. Levin, Esq. (Fed. Bar # ct 27521).

The claims against CTLP and Bigelow are wholly state claims and do not share a common nucleus of operative fact with the federal claims alleged in the Complaint. This Court therefore lacks supplemental jurisdiction to hear plaintiff's claims. Moreover, even if this Court had jurisdiction, plaintiff's claims are barred by the Communications Decency Act of 1996, 47 U.S.C. § 230. Furthermore, the alleged statements are not defamatory as a matter of law and a negligence claim cannot be asserted for the publication of these statements because plaintiff is a public figure. Accordingly, the claims against defendants CTLP and Bigelow should be dismissed pursuant to Fed. R. Civ. P. 12 (b)(1) and Fed. R. Civ. P. 12 (b)(6).

## BACKGROUND[2]

Plaintiff Thompson is a resident of Connecticut and was a candidate for the office of Mayor of Derby, Connecticut beginning in January 2007. (Amended Complaint, ¶¶ 27, 42). He filed the original Complaint in this action on September 26, 2007, claiming, *inter alia*, that his federal constitutional rights were violated by five Connecticut state and town officials and the Derby Republican Town Committee in connection with the failure to put his name on the ballot for the November 2007 election for Mayor of Derby. He further asserted various civil rights and defamation claims against defendant Connecticut's Smallest City Blog, which he identified as a weblog owned by defendant John Doe # 1. (Complaint ¶¶ 26, 73-123). In "Count 12," he asserted a single state law defamation claim against others, including Ctlocalpolitics.net. (Complaint ¶¶ 23, 142-46).

---

[2] Plaintiff Thompson's Complaint and Amended Complaint set forth the relevant facts, which are taken as true for the purposes of this motion.

During a hearing before Judge Warren Eginton on October 4, 2007, on plaintiff's motion for a temporary injunction to place his name on the November ballot as a petitioning candidate for Mayor of Derby, the Court told plaintiff he must first seek relief in state court. The Court further noted that it did not have jurisdiction over the state law claims. (Plaintiff's Motion to Recuse the Honorable Warren W. Eginton, dated Nov. 13, 2007, ¶ 2).

Plaintiff did not pursue his remedies in state court, but instead filed the 21-count Amended Complaint on November 1, 2007. Plaintiff no longer seeks placement of his name on the ballot, but demands $ 100,000,000 in damages from the defendants. The Amended Complaint alleges a conspiracy against plaintiff Thompson and claims that Thompson suffered a pattern of harassment and intimidation designed to deny him access to the electoral process by defendants Mayor Anthony Staffieri, Laura Wabno, Marcy McGuire, Derby Republican Town Committee, Connecticut's Smallest City Blog, John Doe #1, and John Doe #2, whom he refers to as "the Derby Defendants." (Amended Complaint, ¶¶ 43-67, 81-90, 97-150, 152-56). The Amended Complaint further states that defendants Pearl Williams and Secretary of the State Susan Bysiewicz negligently failed to review his petitions, resulting in his denial of ballot access. (Id., ¶¶ 68-80). The Amended Complaint added CTLP, Christopher Bigelow and Mr. Bigelow's employer, Springfield College, as defendants.[3]

Three counts of the 21-count Amended Complaint are asserted against CTLP and Bigelow. In Count 12, plaintiff asserts a defamation claim against defendants CTLP, Bigelow, John Doe #1, John Doe #2, Connecticut's Smallest City Blog, Jason Jones, and Melissa Ryan, claiming that they "published and caused to be published and republished"

---

[3] The Amended Complaint no longer names Ctlocalpolitics.net as a defendant and now alleges, incorrectly, that Connecticut's Smallest City Blog is owned by CTLP (Amended Complaint ¶ 37). Connecticut's Smallest City Blog is a named defendant in this action but has not yet appeared.

attacks against Thompson including "the plaintiff showing signs of mental illness for even running for office and stating that the plaintiffs [sic] mental state had deteriorated over a period of years" and "calling the plaintiff a 'Nigger', [and] most recently after the commencement of this action an 'asshole'," and "accusing the plaintiff of purchasing rather than earning his law degree." (Id., ¶¶ 208-210). Count 14 makes a similar defamation claim against Mr. Bigelow individually and alleges that he acted as owner of Connecticut Local Politics LLC "and its properties specifically ctlocalpolitics.net and ctlocalpolitics.net/derby." (¶¶ 229-231, 235).[4] Count 14 further alleges that Bigelow "allowed threatening and defamatory remarks" to be "to be published and republished on websites that he could have removed, controlled content on or disabled." (Amended Complaint ¶ 235). Count 15, also against Mr. Bigelow, alleges essentially the same facts, but styles itself as a claim for negligence. (Amended Complaint ¶¶ 237-45). There is no indication in the Amended Complaint on which dates these allegedly defamatory statements appeared, their context, or who posted the statements.

---

[4] As previously noted, plaintiff Thompson alleged in the original Complaint that Connecticut's Smallest City Blog, which appeared as Ctlocalpolitics.net/derby, was owned by John Doe # 1. He was personally advised before he filed the Amended Complaint that although Connecticut's Smallest City Blog was linked from Ctlocalpolitics.net's website, the former was never owned nor operated by CTLP or Mr. Bigelow. For the purposes of this motion, this Court must accept the allegations in the Amended Complaint as true. However, if plaintiff does not withdraw this allegation, defendants CTLP and Bigelow will seek Rule 11 sanctions on the ground that plaintiff has no good faith basis for this assertion.

# ARGUMENT

## Motion to Dismiss Standard

In order to withstand a motion to dismiss, a complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombley*, 127 S.Ct. 1955, 1974 (2007). While the facts in the complaint must be taken as true for the purposes of a motion to dismiss, the facts must be "enough to raise a right to relief above the speculative level." *Id.* at 1965; *ATSI Communications, Inc. v. Shaar Fund, Ltd*, 493 F.3d 87, 98 (2d Cir. 2007). The plaintiff must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render a claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). Even where a pro se complaint is involved, the complaint must afford the defendants fair notice of the claims and the grounds upon which they are based. *Morrison v. Berger*, 2007 U.S. Dist. LEXIS 83308 (D. Conn. Nov. 8, 2007), *1-2 (granting motion to dismiss pro se complaint). "[O]nce the question of jurisdiction is raised, the burden of establishing subject matter jurisdiction rests on the party asserting such jurisdiction." *Denuzzo v. Yale New Haven Hosp.*, 465 F. Supp. 2d 148, 151 (D. Conn. 2006).

In a defamation case, plaintiff is not required to plead defamation *in haec verba*, but he must provide sufficient notice of the communications complained of to enable a defendant to defend himself. *Reilly v. Natwest Markets Group, Inc.*, 181 F.3d 253, 271 (2d Cir. 1999). A plaintiff must plead "what defamatory statements . . . were made concerning the plaintiff, when they were made, [and] to whom they might have been made." *Anthony v. Young & Rubicam*, 979 F. Supp. 122, 128 (D. Conn. 1997), *quoting Bramesco v. Drug Computer Consultants*, 834 F. Supp. 120, 122 (S.D.N.Y. 1993). *See also Wanamaker v. Columbian Rope Co.*, 713 F. Supp. 533, 545 (N.D.N.Y. 1989), *aff'd*, 108 F.3d 462 (2d Cir. 1997); *Smith*

*v. Yale University*, 415 F. Supp. 58, 108-09 (D. Conn. 2006), *vacated on other grounds* 2006

U.S. Dist. LEXIS 24847, * (D. Conn. Apr. 28, 2006); *Croslan v. Housing Auth.*, 974 F. Supp.

161, 169-70 (D. Conn. 1997).  This information is needed because the defamatory nature of a

publication "should ordinarily be resolved at the pleading stage." *See Church of Scientology*

*Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001).

   In this case, plaintiff cannot meet his burden of demonstrating that there is

supplemental jurisdiction over the defendants Bigelow and CTLP.  Moreover, the underlying

claims are insufficiently pleaded and fail to state a claim upon which relief can be granted.

The plaintiff relies on conclusory allegations that defamation occurred that has some

connection with defendants CTLP and Bigelow, without indicating when the statements

occurred, where each of them appeared, their context, or who actually uttered or posted them.

(Amended Complaint  ¶¶ 208-210, 229-31)  Conclusory allegations or legal conclusions

masquerading as factual conclusions will not suffice to prevent a motion to dismiss from

being granted.  *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002).

Accordingly, their motion to dismiss should be granted in its entirety.

## I.  PLAINTIFF'S CLAIMS AGAINST DEFENDANTS CTLP AND BIGELOW SHOULD BE DISMISSED BECAUSE THE FEDERAL AND STATE CLAIMS DO NOT SHARE A COMMON NUCLEUS OF OPERATIVE FACT

   The sole claims against CTLP and Bigelow are state law defamation and negligence

claims that should be dismissed for lack of subject matter jurisdiction.  There is no diversity

of citizenship between the parties and the state law claims alleged against defendants CTLP

and Bigelow do not share a common nucleus of operative fact with the federal question

claims against most of the other defendants.

Plaintiff alleges in the Amended Complaint that this Court has federal question jurisdiction in this case and supplemental jurisdiction over the state claims. (Amended Complaint ¶¶ 1, 3). In order for a federal court to have supplemental jurisdiction over a purely state law claim, the facts underlying the federal and state claims must arise from a common nucleus of operative fact. *Achtman v. Kirby, Mcinerny & Squire*, 464 F.3d 328, 335 (2d Cir. 2006); *Azevedo v. Club Getaway, Inc.*, 2008 U.S. Dist. LEXIS 8962, *5 (D. Conn. Feb. 7, 2008). A common nucleus of operative fact exists where the facts underlying the state and federal claims substantially overlap or where the federal claim necessarily brings the facts underlying the state claim before the court. *Achtman*, 464 F.3d at 335-36. "We have routinely upheld the exercise of pendent jurisdiction where the facts underlying the federal and state claims substantially overlapped, or where presentation of the federal claim necessarily brought the facts underlying the state claim before the court. Conversely, we have found pendent jurisdiction lacking when the federal and state claims rested on essentially unrelated facts." *Lyndonville Savings Bank v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000).

There is a common nucleus of operative fact where the claims concern the same conduct, and will present the same evidence or require the same determination of fact. *Denuzzo v. Yale Hosp.*, 465 F. Supp. 2d 148, 152 (D. Conn. 2006). "[I]f, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

7

A court will commonly exercise its supplemental jurisdiction if "considerations of judicial economy, convenience and fairness to litigants" weigh in favor of hearing the claims at the same time." *Promisel v. First Am. Artificial Flowers*, 943 F.2d 251, 254 (2d Cir. 2006) (internal quotations omitted). One "clear hallmark" of a common nucleus of operative fact is a court's familiarity with the facts of a case due to long exposure to the case. *Achtman,* 464 F.3d at 336 (noting that supplemental jurisdiction was appropriate where the district court had managed consolidated cases for ten years and approved numerous settlements).

In this case, the facts and law underlying the federal claims and the state claims are separate. The federal claims involve an alleged pattern of harassment against Mr. Thompson and a conspiracy, resulting in the denial of his access to the electoral process. (Amended Complaint ¶¶ 43-82). The alleged harassment involve a concerted effort to deny Mr. Thompson access to the ballot, statements made to Mr. Thompson, epithets yelled at his home, and an effort by the Town Clerk of Derby to leave his name off of the ballot. The conspiracy to keep plaintiff off the ballot is alleged to include Anthony Staffieri, Laura Wabno, Marcy McGuire, Republican Town Committee, Connecticut's Smallest City Blog, John Doe # 1, John Doe # 2, but no corporate entity. (Amended Complaint ¶¶ 10-12, 55, 82, 85). Plaintiff further alleges negligence in the handling of signature petition forms by defendants Bysiewicz and Williams , resulting in the failure to place plaintiff's name on the ballot. (Amended Complaint ¶¶ 14, 199-206).

By contrast, the claims against CTLP and Bigelow are defamation and negligence claims allegedly involving statements made by pseudonymous users of the CTLP website. In essence, plaintiff alleges that certain blogs acted as a message board and communication device for the Derby defendants and that the Derby defendants and others who posted to

8

these blogs attempted to deprive plaintiff of his Constitutional rights.  (Amended Complaint ¶¶ 137-38).  Plaintiff claims that defendants CTLP and Bigelow allowed these posted statements to be published on various websites and should have removed them (Amended Complaint ¶¶ 15-20), but does not allege that they authored the postings or were co-conspirators in the alleged conspiracy.  The state claims against CTLP and Bigelow raise issues, including, *inter alia*, precisely where the alleged comments appeared and whether they are capable of a defamatory meaning.  The federal and state claims neither substantially overlap, nor does the presentation of the federal claims necessarily bring the facts underlying the state claims before the Court.

Moreover, the interests of fairness and judicial economy are not served by extending subject matter jurisdiction to the state claims.  The federal claims and the state claims against CTLP and Bigelow involve different defendants and unrelated alleged motives.  It would be judicially uneconomical for the Court to include unrelated defamation claims with federal questions of ballot access.  The Court has not invested any time or resources in experience with the facts of the federal question, much less the unrelated state claims.

The state law claims against CTLP and Bigelow should be dismissed for lack of subject matter jurisdiction in federal court.  The state claims do not share a common nucleus of operative fact with the federal claims and, as such, are not properly before this Court.

## II. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS AGAINST CTLP AND BIGELOW BECAUSE § 230(C)(1) OF THE COMMUNICATIONS DECENCY ACT IS A COMPLETE BAR TO THOSE CLAIMS

Even if the Court decides that  it has subject matter jurisdiction over the state law claims against defendants CTLP and Bigelow, the defamation and negligence claims against

them should be dismissed because the Communications Decency Act of 1996 ("CDA"), 42

U.S.C. § 230, bars claims against website operators for information posted by other parties.

Section 230 operates to relieve websites, electronic discussion boards and other

internet-based hosts from being treated as a "publisher" of information posted by third

parties. "By its plain language, § 230 creates a federal immunity to any cause of action that

would make service providers liable for information originating with a third-party user of the

service." *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). Section 230

states that "[n]o provider or user of an interactive computer service shall be treated as the

publisher or speaker of any information provided by another information content provider."

47 U.S.C. § 230(c)(1). The courts have noted that Section 230 protection should be "broadly

construed." *Universal Communication Systems v. Lycos*, 478 F.3d 413, 419 (1st Cir. 2007);

*Gregorson v. Vilana Financial, Inc.*, 2008 U.S. Dist. LEXIS 11727, *23 (D. Minn. Feb. 15,

2008).[5]

Courts apply a three-prong test to determine whether immunity will be afforded under

Section 230. The defendant is immunized from defamation, negligence and other tort claims

---

[5] Congress enacted § 230 for two reasons. First, Congress recognized the threat that tort-based lawsuits pose to freedom of speech in the new and burgeoning Internet medium. *Zeran v. America Online*, 129 F.3d 327, 330 (4th Cir. 1997). Second, Congress wished to overrule *Stratton Oakmont v. Prodigy Servs. Co*, 1995 Misc. LEXIS 229 (N.Y. Sup. Ct. May 24, 1995), in which the court found that an interactive computer service could be held liable as a publisher for defamatory statements posted on its bulletin board by a third party. The *Stratton Oakmont* court had reasoned that Prodigy's efforts to monitor its bulletin boards could make it a "publisher" of libel. Concerned that interactive service providers might be reluctant to regulate content posted by third parties because of fear it would make them "publishers," Congress enacted § 230 to remove the disincentives to self-regulate created by *Stratton Oakmont*. H.R. Conf. Rep. 104-458, at 194 (1996); S. Rep. No. 104-230, at 194 (1996). Congress feared that "[f]aced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted. Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect." *Zeran*, 129 F.3d at 331. *See also Batzel v. Smith*, 333 F.3d 1018, 1029-30 (9th Cir. 2003).

if: (1) the defendant is a provider or user of an interactive computer service; (2) the claim "is based on information provided by another information content provider"; and (3) the claim would treat the defendant "as the publisher or speaker" of that information. *Universal Communication Systems*, 478 F.3d at 418; *Zeran*, 129 F.3d at 330-34; *Dimeo v. Max*, 433 F. Supp. 2d 523, 529 (E.D. Pa. 2006), *aff'd*, 2007 U.S. App. LEXIS 22467 (3d Cir. Sept. 13, 2007).  All three of those elements are present here.

### A.  CTLP is an Interactive Computer Service or a User of Such Service

CTLP satisfies the first prong of the test because it is an interactive computer service or a user of such service.  As previously noted, Section 230 states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).  An interactive computer service is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server. . . ." 47 U.S.C. § 230(f)(2).  The immunity afforded under Section 230(c) includes internet service providers such as AOL as well as web sites. *See, e.g., Universal Communication Systems*, 478 F.3d at 419; *Dimeo v. Max*, 433 F. Supp. 2d 523, 530 (E.D. Pa. 2006), *aff'd*, 2007 U.S. App. LEXIS 22467 (3d Cir. Sept. 13, 2007); *Batzel v. Smith*, 333 F.3d 1018, 1029-30 (9th Cir. 2003); *Carafano v. Metrosplash.com., Inc.*, 207 F. Supp. 2d 1055, 165-66 (C.D. Cal. 2002).

Plaintiff alleges that the Derby defendants used various websites, including one accessible through Ctlocalpolitics.net, "as a message board and communication device." (Amended Complaint ¶ 137).  Even assuming this is true, CTLP, through its website Ctlocalpolitics.net, operated as an interactive computer service under Section 230 (f).  As

such, CTLP and Bigelow are immune from tort liability for the statements of third parties that were posted on the website under 47 U.S.C. § 230 (c).

### B. The Allegedly Defamatory Remarks Were Not Provided by CTLP or Bigelow

The second prong of the test is satisfied because the allegedly defamatory remarks were not provided by CTLP or Bigelow.  Instead, they were based on information provided by another information content provider.

An information content provider is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3).  While interactive computer services are responsible for their own speech, they are not responsible for the speech of users of their service.  *Universal Communication Systems*, 478 F.3d at 419-20.  "[N]otice of the unlawful nature of the information provided is not enough to make it the service provider's own speech."  *Id.* at 420; *Zeran*, 129 F.3d at 332-33 (upholding dismissal of defamation claims against an internet service provider for anonymous comments posted on a bulletin board).

The Amended Complaint does not clearly indicate when the allegedly defamatory material appeared, the context in which the statements were made, or precisely who posted them.  Nevertheless, CTLP and Bigelow *are not* alleged to have posted the remarks.[6]

In order to withstand a motion to dismiss, the facts alleged in the complaint must be "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombley*, 127 S.Ct. 1955, 1965 (2007); *ATSI Communications, Inc. v. Shaar Fund, Ltd*, 493 F.3d 87, 98 (2d Cir. 2007).   The plaintiff must "amplify a claim with some factual

---

[6] At most, plaintiff alleges it was the "Derby defendants and others who posted to the blogs." (Amended Complaint ¶ 138).

allegations in those contexts where such amplification is needed to render a claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). Since the complaint does not allege that defendants CTLP and Bigelow were the information content providers of the allegedly defamatory statements, Section 230 bars the claims against them. *See Parker v. Google, Inc.*, 2007 U.S. App. LEXIS 16370, **12-13 (3rd Cir. July 12, 2007).

### C. The Claims Against CTLP and Bigelow Treat the Defendants as the Publishers or Speakers of the Allegedly Defamatory Remarks

The third prong of the test is also satisfied because even though defendants CTLP and Bigelow did not provide the allegedly defamatory statements, plaintiff seeks to treat them as the speakers or "publishers" of the remarks.

Where there is no allegation that the defendants created or authored the allegedly defamatory remarks, yet the plaintiff seeks liability against the defendants for those remarks, any potential liability against the defendants must be "premised on imputing" to the defendants the alleged defamatory remarks, "that is, on treating it as the publisher of that information." *Universal Communication Systems*, 478 F.3d at 422. In such circumstances, the claims are barred by the CDA. *Id.*

Here, Thompson's theory of liability rests solely on treating CTLP and Bigelow as the "publisher" of the remarks because they were allegedly posted by the Derby defendants on CTlocalpolitics.net. (Amended Complaint ¶¶ 137-38, 208-210). Under Section 230(c), this theory of liability cannot prevail. CTLP is an interactive computer service that is not liable for information posted by another information content provider. Although plaintiff seeks to confer liability on CTLP and Bigelow as the "publishers" of the allegedly defamatory remarks, the claims against defendants CTLP and Bigelow are absolutely barred by Section 230 (c).

### III.   PLAINTIFF'S LIBEL CLAIMS MUST BE DISMISSED BECAUSE THE STATEMENTS ARE CONSTITUTIONALLY PROTECTED AND OTHERWISE NOT ACTIONABLE AS A MATTER OF LAW

Even if the immunity of the CDA did not apply in this case, plaintiff's defamation claims against CTLP and Bigelow must be dismissed because the four statements that were allegedly published are not actionable as a matter of law.[7]  They allegedly appeared on political websites in the context of a mayoral election and are protected by the First Amendment.

The United State Supreme Court has recognized the importance of public debate about matters of public concern.  The Court voiced "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open, and that…[such debate] may well include vehement, caustic and unpleasantly sharp attacks." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964); *see also Woodcock v. Journal Publ'g Co.*, 646 A.2d 92, 102 (Conn. 1994); *Moriarty v. Lippe*, 294 A.2d 326, 378 (Conn. 1972).   The concern about protecting public debate extends not only to discussion of public officials, but to those who run for political office.  As the Supreme Court has noted, regardless of whether such candidates are termed "public officials" or "public figures," "publication concerning candidates must be accorded at least as much protection under the First and Fourteenth Amendment as those concerning occupants of public office." *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 271 (1971).

For this reason, in order for public officials and public figures to prevail in a libel suit, they are required to prove that any defamatory statement about them was published with

---

[7] Defendants have not seen the text or substance of the alleged statements, except in plaintiff's pleadings in this case and in website postings authored by plaintiff.  For the purposes of this motion, however, defendants must accept the allegations as true.

"actual malice," *i.e.*, knowledge of falsity or reckless disregard for the truth. *New York Times*

*Co. v. Sullivan* 376 U.S. 254, 279-80 (1964); *Woodcock v. Johnson*, 646 A.2d at 97.   Since

opinion can be proved neither true nor false, and plaintiff must prove falsity to succeed,

statements of opinion are largely non-actionable. Robert D. Sack, Sack on Defamation:

Libel, Slander and Related Problems § 4.2.4.2, at 4-15 (3rd ed. 2007); *Daley v. Aetna Life &*

*Cas. Co.*, 734 A.2d 112, 129 (Conn. 1999).

   The courts also protect invective, "vigorous epithet," loose figurative language or

"lusty imaginative language" that literally contain assertions of fact but are intended to

express only points of view. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990); Sack

on Defamation, § 4.2.4.1, at 4-14.   Indeed, "[c]ommon law tradition has combined with

constitutional principles to clothe the use of epithets, insults, name-calling and, and

hyperbole with virtually impenetrable armor." Sack on Defamation:  Libel, Slander and

Related Problems § 2.4.7, at 2-43.   This can be seen in *Moriarty*, in which the Connecticut

Supreme Court refused to allow recovery for statements that plaintiff was a "clown," a "big

fat ape," and a "stupid son of a bitch." *Moriarty*, 294 A.2d at 385.   As the Court noted, [t]he

general rule has long been that words of general abuse, regardless of how rude, uncouth and

vexatious" are not defamatory per se. *Id.*

   When insults occur in a political context, "courts are particularly likely to dismiss

them as nonactionable epithets, both because they probably will be understood that way and

in order to insure protection of vigorous political speech." Sack on Defamation, § 2.4.7, at 2-

49.   Courts have routinely dismissed as non-actionable statements that are made in the

context of political debate.   For example, the U.S. Supreme Court found that in a heated

public debate on a public issue the word "blackmail" was, as a matter of constitutional law,

no more than rhetorical hyperbole. *Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14 (1990). Statements that a political opponent was "corrupt" or "greedy," and a "small time crook" during contentious political struggles were examples of rhetorical hyperbole and not actionable. *Lyons v. Blaise*, 1998 Conn. Super. LEXIS 1516, at *21 (Conn. Super. May 29, 1998).

In this case, the alleged statements about which plaintiff complains—especially in the context of a political election—are legally non-actionable. Thus, the courts have concluded that calling someone an "asshole" is a mere epithet and is not actionable. *Greenhalgh v. Casey*, 1995 U.S. App. LEXIS 32116 (6th Cir. 1995) (term "asshole" is rhetorical hyperbole and is not actionable); *Powers v. Pinkerton*, 2001 Ohio App. LEXIS 138 (Jan. 18, 2001) (refusing to impose liability because no evidence that the term "asshole" was a false statement of fact as opposed to an unverifiable opinion); *Meier v. Novak*, 338 N.W.2d 631 (N.D. 1983) (no recovery for calling plaintiff an "asshole") *Williams v. Board of Trustees* (Ct. Cl. Ill.). *See also Eidholdt v. L.F.P. Inc.*, 860 F.2d 890 (9th Cir. 1988) (declining to impose liability for article that appeared under "Asshole of the Month" column); *Dunn v. Cook*, 1982 Phila. Cty. Rptr. LEXIS 93 (Common Pleas 1982) ("[t]he use of the term 'asshole' is not a biological usage in this case. It is a vulgarism used as a term of personal invective").

Racial slurs, while undeniably offensive, are also not defamatory as a matter of law. *See, e.g., Grillo v. John Alden Life Ins. Co.*, 939, F. Supp. 1685 (D. Minn. 1996)(not defamatory to call employee a "dago guinea"); *Gomez v. Hug*, 645 P.2d 916, 923 (Kan. App. 1982) ("fucking spic" and "fucking Mexican greaser" not actionable). Likewise, the term "nigger" has not been treated as defamatory by the courts. *See, e.g., Wilson v. Evans*, 2006

U.S. Dist. LEXIS 89233 (S.C. Dec. 4, 2007) (term "nigger" not slanderous per se); *Daniels v. Alvarado*, 2004 U.S. Dist. LEXIS 3893, *21 (E.D.N.Y. March 12, 2004) (term "stupid nigger" is not actionable); *Ledsinger v. Burmeister*, 319 N.W.2d 558, 563 (Mich. Ct. App. 1982) (term "nigger" is not defamatory); *Irving v. J.L. Marsh*, 360 N.E.2d 983, 985 (Ill. 3d Dist. 1977) (term "arrogant nigger" is not libel per se).

Courts have also declined to find defendants liable when they have suggested that someone is not mentally stable when it is clear from the context that the statement is rhetorical hyperbole.   Thus, it is not actionable to call someone a "nut" in the context of an obvious disagreement. *Fleming v. Benzaquin*, 454 N.E.2d 2d 95 (Mass. 1983).  Nor is it actionable to call someone "paranoid" or "crazy." *Lopos v. City of Meriden Bd. of Ed.*, 2006 U.S. Dist. LEXIS 32469, **21-23 (D. Conn. May 16, 2006).  *See also Weyrich v. New Republic*, 235 F.3d 617, 624-25 (D.C. Cir 2001) (statement that plaintiff was "paranoid" was "rhetorical sophistry"); *Steipien v. Franklin*, 528 N.E.2d 1324 (Ct. App. Ohio 1988) (finding that calling plaintiff a "pathological liar," "nuts," "crazy," "irrational" and a lunatic" was constitutionally protected speech).  Thus, the comments alleged by Thompson, that plaintiff was "showing mental illness for even running for office" and that "plaintiffs [sic] mental state had deteriorated over a period of years" (Amended Complaint ¶ 209) cannot be understood as anything but rhetorical hyperbole when they were posted on a political blog in the context of a mayoral election.

The final allegedly defamatory statement, *i.e.*, the one "accusing the plaintiff of purchasing rather than earning his law degree" (Amended Complaint ¶¶ 214, 231, 240), must also be dismissed.   The plaintiff has not stated a colorable claim where he has not provided information about the context in which this statement allegedly appeared, who posted it, or

when it appeared. *See Wanamaker v. Columbian Rope Co.*, 713 F. Supp. 533, 545 (N.D.N.Y. 1989) (dismissing defamation claim where plaintiff failed to specify who made the statements, when they were made and in what context), *aff'd*, 108 F.3d 462 (2d Cir. 1997). Indeed, although plaintiff signs his pleadings "Mel Thompson, J.D.," the Amended Complaint does not allege that plaintiff earned a law degree or how or from where he earned it. Since this portion of the claim has not been sufficiently alleged in order for defendants to defend themselves, it must be dismissed as a matter of law. *See Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 271 (2d Cir. 1999); *Anthony v. Young & Rubicam*, 979 F. Supp. 122, 128 (D. Conn. 1997).[8]

Since the allegedly defamatory statements about which plaintiff complains are not capable of a defamatory meaning or are not otherwise actionable, the claims against defendants CTLP and Bigelow should be dismissed as a matter of law.

## IV.    THE NEGLIGENCE CLAIM MUST BE DISMISSED BECAUSE PLAINTIFF CANNOT CIRCUMVENT THE CONSTITUTIONAL ACTUAL MALICE STANDARD BY ALLEGING NEGLIGENCE

Apparently aware of the legal deficiencies of his defamation claims, plaintiff attempts to use the same facts to assert a negligence claim against Mr. Bigelow in Count 15. This claim should be dismissed for failing to state a claim upon which relief can be granted, because plaintiff cannot avoid the Constitutional requirement that a public figure prove actual malice by relabeling his claim as a negligence claim.

---

[8] Defendants believe that even if properly pleaded, the statement is non-actionable hyperbole and may be defended on other grounds. Nevertheless, because insufficient information was provided for CTLP and Bigelow to develop these defenses, the arguments are not being briefed at this time.

A public figure who is complaining about allegedly defamatory speech cannot circumvent the actual malice standard by asserting a tort with a lower burden of proof.  In *Hustler Magazine v. Falwell*, 485 U.S. 46 (1988), the plaintiff asserted a claim for intentional infliction of emotional distress after a publication suggested, in a parody, that plaintiff was having an incestuous encounter with his mother in an outhouse.  The Court stated, "public figures and public officials may not recover for the tort of intentional infliction of emotional distress by reason of publications such as the one here at issue without showing in addition that the publication contains a false statement of fact which was made with 'actual malice,' *i.e.*, with knowledge that the statement was false or with reckless disregard as to whether or not it was true." *Hustler Magazine v. Falwell*, 485 U.S. at 56.  As the Court noted, this holding reflects "the considered judgment that such a standard is necessary to give adequate 'breathing space' to the freedoms protected by the First Amendment." *Id.* at 53. *See also Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1034 (2d Cir. 1997) (plaintiff "cannot avoid the obstacles involved in a defamation claim by simply relabeling it as a claim for intentional infliction of emotional distress").

The courts have required that the actual malice standard be met in tort and other claims predicated on allegedly defamatory speech, "recognizing that a plaintiff may not avoid the protection afforded by the Constitution merely by the use of creative pleading." *Compuware Corp. v. Moody's Investors Services, Inc.*, 499 F.3d 520, 530 (6th Cir. 2007) (extending actual malice standard to breach of contract claims used to avoid defamation claims). *See also Beverly Hills Foodland, Inc. v. United Food & Commercial Workers Union*, 39 F.3d 191, 196 (8th Cir. 1994) (holding that actual malice standard must be met for tortious interference claims based on allegedly defamatory statements); *Unelko Corp. v.*

*Rooney*, 912 F.2d 1049, 1057-58 (9th Cir. 1990) (holding that plaintiff's intellectual property

tort claims were subject to the same requirements that govern actions for defamation);

*Edwards v. Great N. Ins. Co.*, 2006 U.S. Dist. LEXIS 50683, *19 (E.D.N.Y. 2006) ("a

plaintiff cannot sidestep the stringent prerequisites of a defamation claim by disguising such

claim as another tort"); *Cowras v. Hard Copy*, 1997 U.S. Dist. LEXIS 23514, *58 (D. Conn.

Sept. 29, 1997).

Plaintiff Thompson's negligence claim against Mr. Bigelow is based on the theory

that he "owed a duty of care to the plaintiff and did negligently breach said duty by allowing

defamatory and threatening remarks. . . . to be published and republished on websites."

(Amended Complaint ¶ 244). Such an assertion is nothing more than an attempt to repackage

his deficient defamation claim as one for negligence. Thompson is a public figure and his

negligence claim does not meet the constitutionally-mandated actual malice standard, which

requires him to prove "knowledge of falsity or reckless disregard for the truth." Mr.

Thompson cannot avoid the actual malice standard simply by relabeling his claim as

sounding in negligence, and his negligence claim (Count 15) should be dismissed for failure

to state a claim upon which relief can be granted.

## CONCLUSION

For the foregoing reasons, defendants Connecticut Local Politics, LLC and

Christopher Bigelow respectfully request that this Court grant their motion and dismiss the

claims against them in their entirety.

DEFENDANTS CHRISTOPHER BIGELOW

CONNECTICUT LOCAL POLITICS, LLC

By:_____

Christopher Bigelow, Pro Se
25 Glendale Road
Enfield, CT  06082
Telephone:  (860) 749-2072
Email:  chris@ctlocalpolitics.net

## CERTIFICATION

I hereby certify that I substantially assisted in the preparation of the foregoing Memorandum of Law in Support of Defendants Connecticut Local Politics, LLC's and Christopher Bigelow's Motion to Dismiss.

<div style="margin-left:50%">

_____

Leslie C. Levin (# ct 2752)
55 Elizabeth Street
Hartford, CT  06105
Telephone: (860) 570-5207
leslie.levin@law.uconn.edu

</div>

## CERTIFICATE OF SERVICE

I hereby certify that this Memorandum of Law was served by first class U.S. Mail, postage prepaid, on the 25th day of March, 2008, to the following:

**Plaintiff**

Mel Thompson
58 Marshall Lane
Derby, CT 06418

**Counsel for Anthony Staffieri, Laura Wabno & Marcy McGuire**

Jeffrey E. Potter
John J. Radshaw, III
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114-1190

Joseph T. Coppola
2 Corporate Drive, Suite 201
Trumbull, CT  06611

**Counsel for Secretary of State and Pearl Williams**

Robert J. Deichert
Attorney General's Office
55 Elm Street, P.O. Box 120
Hartford, CT  06141-0120

**Counsel for Derby Republican Town Committee**

Benjamin S. Proto, Jr. Esq.
2090 Cutspring Road
Stratford, CT 06614

**Counsel for John Doe # 2 a/k/a Derby Conservative**

Kevin S. Coyne
Coyne, von Kuhn, Brady & Fries, LLC
999 Oronoque Lane
Stratford, CT  06614

**Counsel for Springfield College**

Dawn D. McDonald
Mark D. Mason
Cooley, Schrair P.C.
1380 Main Street
Springfield, MA  01103


Christopher Bigelow